IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

BRENDA SMITH,                                        Civil Action No.

       Plaintiff,

v.

AROOSTOOK COUNTY; and SHAWN
D. GILLEN, Chief Deputy and Acting
Aroostook County Sheriff,

       Defendants.

**COMPLAINT**
**(JURY DEMAND AND INJUNCTIVE RELIEF REQUESTED)**

Plaintiff Brenda Smith complains against Defendant Aroostook County, and Defendant Shawn D. Gillen, Chief Deputy and Acting Aroostook County Sheriff (collectively, "Defendants"):

**INTRODUCTION**

1. Aroostook County and the Aroostook County Sheriff's Department, which is overseen by Chief Deputy Gillen, routinely and systematically fail to provide adequate medical care to those in their custody. Plaintiff Smith files this lawsuit to ensure she is able to receive the care she needs.

2. Ms. Smith suffers from opioid use disorder, a chronic brain disease. She has been in recovery for almost ten years and has done everything in her power to remain in recovery. A big part of her treatment has been medication-assisted treatment ("MAT"), which is the standard of care for opioid use disorder. As part of her MAT, Ms. Hodgkin takes a maintenance dosage of

buprenorphine, which operate to block opioid receptors in the brain, suppressing drug cravings and withdrawal symptoms.

3. There is substantial medical consensus that MAT is the standard of care for opioid use disorder. Nonetheless, the Aroostook County Sheriff's Office and Maine Department of Corrections both have policies prohibiting MAT for opioid use disorder, even for those who are presently taking prescribed buprenorphine prescribed by their doctor, like Ms. Hodgkin.

4. Ms. Hodgkin will enter the Defendants' care when she is required to report to prison on September 7, 2018.

5. Defendants' policies will force Ms. Smith into acute withdrawal, which is extremely painful and carries a heightened risk for numerous serious medical conditions. Forced withdrawal could also trigger relapse, leading to complications such as overdose and death.

6. The Defendants' denial of necessary medical care to Ms. Smith violates her right to be free from discrimination based upon her disability as guaranteed by the Americans with Disabilities Act. Further, Defendants' deliberate indifference to Ms. Smith's suffering and long-term consequences of forced withdrawal violate her constitutional right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

7. Ms. Smith seeks compensatory, declaratory and injunctive relief to enjoin the Defendants to provide her with necessary medical care and prevent suffering.

**PARTIES**

8. Plaintiff Brenda Smith is a resident of Madawaska, Maine.

9. Defendant Shawn D. Gillen is the Chief Deputy and Acting Sheriff of the Aroostook County Sheriff's Department. As such, he is the legal custodian of all prisoners

housed at Aroostook County Jail and is responsible for the safe, secure, and humane treatment of those prisoners, including medical care. Chief Deputy Gillen is sued in his official capacity.

10. At all times relevant to this complaint, Chief Deputy Gillen was acting under color of state law.

11. Defendant Aroostook County is a political subdivision of the State of Maine.

## JURISDICTION

12. This action seeks to vindicate rights guaranteed by the Eighth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983.

13. This action is also brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134.

14. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under federal law. Jurisdiction is also authorized pursuant to 28 U.S.C. § 1343(a)(3).

15. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all the events and omissions giving rise to this action occurred within this judicial district and because the Defendants are subject to personal jurisdiction in this District.

## FACTS

Opioid Use Disorder Is a Serious Disability

16. Opioid use disorder is a chronic brain disease with potentially deadly complication Signs of opioid use disorder include craving, increasing tolerance to opioids, withdrawal symptoms, and a loss of control.

17. Like other chronic diseases, opioid use disorder often involves cycles of relapse and remission. Without treatment or other recovery, patients with opioid use disorder are

frequently unable to control their use of opioids. Opioid use disorder is progressive and can result in disability or premature death.

18. There is an opioid epidemic in Maine, with an average of 1.14 overdose deaths per day reported in 2017. That figure marks an 11 percent increase in opioid overdose deaths over the previous year. As these figures show, opioid use disorder is a serious public health crisis in Maine.

19. Drug addiction is a "disability" under the Americans With Disabilities Act. *See* 42 U.S.C. §§ 12102 and 12131(2); 28 C.F.R. § 35.108 ("The phrase physical or mental impairment includes, but is not limited to . . . drug addiction, and alcoholism.").

20. Although the Americans with Disabilities Act does not apply to current active users of illegal drugs, it does apply to people like Mr. Smith who are participating in a supervised drug rehabilitation program. *See* 42 U.S.C. § 12210(a) & (b); *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002); *Collings v. Longview Fiber Co.*, 63 F.3d 828, 831-32 (9th Cir. 1995).

Medication-Assisted Treatment Provides Life-saving Treatment for Opioid Use Disorder

21. Medication-assisted treatment is the standard of care for opioid use disorder. Although some patients can treat their opioid use disorder using other methods, most patients need medication-assisted treatment ("MAT") to achieve long-term recovery.[1]

22. MAT is an opioid treatment that combines medication and counseling. Two medications used in MAT are methadone and buprenorphine. Both have been approved by the United States Food and Drug Administration for treatment of opioid dependence.

---

[1] Frequently Asked Questions about Opioid Use Disorder and IMAT, MaineHealth, https://mainehealth.org/-/media/mainehealth/pdfs/opioids/frequently-asked-questions-about-opioid-use-disorder-and-imat.pdf?la=en   (last visited August 28, 2018).

23. The results of treatment with MAT are dramatically superior to other treatment options, with studies showing improved retention in treatment, abstinence from illicit drugs, and decreased mortality.

24. The medication element of MAT, including buprenorphine and methadone, helps to prevent the "high" of taking opioids, suppresses withdrawal, and reduces cravings.

25. Methadone is a full agonist at the opioid receptor, and buprenorphine is a partial agonist. In other words, methadone activates the opioid receptor at 100 percent, and buprenorphine activates opioid receptors approximately 20 to 40 percent.

26. Both buprenorphine and methadone bind tightly to the opioid receptor so that someone taking one of these medications is not able to feel a "high" from taking heroin or fentanyl because those drugs are not able to activate the opioid receptor. Both methadone and buprenorphine also facilitate extinction learning, because patients learn that they will not get the same "high" from taking drugs like heroin or fentanyl.

27. Buprenorphine and methadone have been clinically proven to reduce opioid use more than (1) no treatment, (2) outpatient treatment without medication, (3) outpatient treatment with placebo medication, and (4) detoxification only.

28. MAT is far more effective than detoxification alone, which produces very poor outcomes. For example, one study documented the treatment outcomes from a detoxification facility, and showed (1) a 29 percent relapse on the day of discharge, (2) a 60 percent relapse after one month, and (3) a success rate of between only 5 to 10 percent after one year.

29. Forced detoxification is especially dangerous for people with opioid use disorder who are incarcerated. Prisoners with opioid use disorder have a heightened risk for relapse and

overdose, with overdose and death especially high in the two-week period immediately following release.

30. Numerous authorities have recognized the serious risks of the opioid crisis and recommended providing MAT in prison to help address those risks.

31. For example, the President's Commission on Combating Drug Addiction and the Opioid Crisis found that "[i]n the weeks following release from jail or prison, individuals with or in recovery from [opioid use disorder] are at elevated risk of overdose and associated fatality."[2]

32. As the commission further recognized, "MAT has been found to be correlated with reduced risk of mortality in the weeks following release and in supporting other positive outcomes." *Id.* "A large study of individuals with [opioid use disorder] released from prison found that individuals receiving MAT were 75% less likely to die of any cause and 85% less likely to die of drug poisoning in the first month after release." *Id.*

33. The American Society of Addiction Medicine, the leading professional society in the country on addiction medicine, also recommends treatment with MAT for people with opioid use disorder in the criminal justice system.[3]

34. The National Commission on Correctional Health Care has also adopted a position statement calling for the "continuation of prescribed medications for substance use disorders," such as buprenorphine and methadone.[4]

35. The United States Department of Justice's Adult Drug Court Discretionary Grant Program has gone even further, requiring grantees to permit the use of MAT.[5]

---

[2] Final Report 72 (2017), available at https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-1-2017.pdf

[3] Kyle Kampman & Margaret Jarvis, American Society of Addiction Medicine (ASAM) National Practice Guideline for the Use of Medications in the Treatment of Addiction Involving Opioid Use, 9 J. Addict Med. 1, 8 (2015), available at FILL IN

[4] National Commission on Correction Health Care, Substance Use Disorder Treatment for Adults and Adolescents, NCCHC (Oct. 23, 2016), available at https://www.ncchc.org/substance-use-disorder-treatment-for-adults-and-adolescents.

36. As recognized by these authorities, opioid use disorder is a chronic relapsing condition that requires medically appropriate treatment just like other chronic diseases. Once patients start on MAT, they need to be maintained on that treatment under medical supervision to give them the best chances of success.

37. Forced withdrawal is not medically appropriate for patients being treated with MAT. It disrupts their treatment plan, leading to a seven-fold decrease in continuing MAT after release. Death is three times as likely for people out of treatment versus when in treatment.

38. Numerous jails and prisons follow medical and policy authorities and allow prisoners to continue with MAT during incarceration. Examples include Bernalilo County Metropolitan Detention Center (New Mexico); Rikers Island Correctional Facility (New York); Kings County Jail (Washington State); Orange County Jail (Florida).

39. The Rhode Island Department of Corrections makes medication-assisted treatment available to all its prisoners, even those (unlike Ms. Smith) who were not receiving MAT before being admitted to prison.

Ms. Smith's Medical History

40. Brenda Smith suffers from opioid use disorder. With the help of MAT, Ms. Smith has been in recovery for almost ten years and is not an active user of narcotics.

41. Ms. Smith is under presently the care of Dr. David Conner, M.D., a family medicine doctor whose practice includes the treatment of drug addiction.

42. As part of Ms. Smith's treatment, Dr. Connor has continued her prescription of buprenorphine, which Ms. Smith takes orally, in the form of a sublingual pill. Ms. Smith takes 16 milligrams of buprenorphoine per day.

---

[5] U.S. Dep't of Justice, Adult Court Discretionary Grant Program FY 2018 Competitive Grant Announcement, OMB No. 1121-0329 (2018), available at https://www.bja.gov/funding/DrugCourts18.pdf.

43. Buprenorphine has helped Ms. Smith remain clean and sober for almost ten years.

44. If Ms. Smith is abruptly withdrawn from her prescribed buprenorphine, she will enter acute withdrawal, which will create a potentially life-threatening crisis and place her at risk for numerous serious health conditions including suicide and overdose. The dangers of withdrawal are especially acute for Ms. Smith.

45. The physical symptoms of abrupt withdrawal will likely include severe body aches, nausea, shaking, sweating, dizziness, dehydration, and vomiting.

46. The psychological symptoms of withdrawal for Ms. Smith may include decompensation, severe depression, and suicidality.

47. Discontinuation of buprenorphine puts Ms. Smith at a substantially greater risk of relapse of opioid use disorder, which she has managed successfully for almost ten years. With a relapse of addiction would come the attendant danger of Ms. Smith becoming unable to control her cravings for opioids, potentially resulting in overdose and death.

Defendants' Policies Place Ms. Smith in Imminent Danger

48. Ms. Smith faces an imminent prison sentence at the Aroostook County Jail, where Defendants' policies will force Ms. Smith into dangerous and potentially life-threatening withdrawal.

49. Ms. Smith pleaded guilty to charges in a criminal case in Aroostook County District Court. Ms. Smith was sentenced to forty (40) days imprisonment in Aroostook County Jail.

50. Aroostook County Jail provides necessary medical care to prisoners in its custody, except for prisoners who suffer from opioid use disorder. The Aroostook County Jail prohibits

the use of MAT, even for individuals who suffer from opioid use disorder and are already undergoing treatment with MAT at the time of admission to prison or jail.

51. Chief Deputy Gillen oversees prisoners at Aroostook County Jail and is responsible for setting policy governing the treatment of prisoners, including their access to medical care.

52. It is the policy and custom of the Aroostook County Jail to prohibit prisoners from taking buprenorphine or any other forms of MAT.

53. Upon information and belief, it is the policy and custom of the Aroostook County Sheriff's Office to forbid the medical staff and contractors at Aroostook County Jail from administering MAT to prisoners.

54. Ms. Smith has personal experience with being denied buprenorphine. She was previously incarcerated for seven days in the York County Jail and was denied access to buprenorphine. In this period she suffered painful and psychologically harmful withdrawal.

55. Defendant Commissioner Fitzpatrick is responsible for prisoners in Maine state custody.

56. Immediately after learning of Ms. Smith's situation, counsel for Mr. Smith sent a letter dated August 29, 2018 to Assistant District Attorney Kari Wells Pluckett and District Attorney Todd Collins requesting that Ms. Smith either be provided with buprenorphine during her incarceration or be permitted to delay her admission to jail until after the resolution of a preliminary injunction motion in *Smith v. Fitzpatrick*, U.S. District Court for the District of Maine, Case No. 1:18-cv-288-NT, a related case espousing essentially identical issues.

57. Counsel for Ms. Smith consulted with ADA Wells Plucket and was advised to communicate direction with Commander Craig Clossey of the Aroostook County Jail.

58. Between August 30, 2018 and September 5, 2018, Counsel for Ms. Smith contacted the Aroostook County Jail to find out whether she would be allowed to continue taking her medication in prison. She was told that the Maine Department of Corrections does not allow prisoners, except for pregnant prisoners, to be treated with buprenorphine or methadone.

59. Counsel for Ms. Smith was able to confer with Commander Clossey, but as of the filing of this complaint was unable to come to an arrangement through which either Ms. Smith would be permitted to remain on her buprenorphine medication or her admission to jail was delayed.

60. Accordingly, Ms. Smith remains in fear that she will undergo forced withdrawal upon admission to jail or prison on September 7, 2018.

## FIRST CAUSE OF ACTION

**Eighth Amendment: Deliberate Indifference to Serious Medical Need**

61. Plaintiff Brenda Smith reasserts and realleges the allegations in the preceeding paragraphs.

62. Defendants, while acting under color of state law, deliberate, purposefully, and knowingly deny Ms. Smith access to necessary medical treatment for her opioid use disorder, which is a serious medical need.

63. Denying Ms. Smith access to her prescribed maintenance dosage of buprenorphine will cause her physical and psychological suffering, will expose her to heightened risk for other serious medical conditions, and could trigger relapse into active addiction, potentially resulting in overdose and death.

64. As applied to Ms. Smith, the denial of treatment by Defendants amounts to deliberate indifference to a serious medical need, which is prohibited by the Eighth

Amendment's provision on cruel and unusual punishment. *See, e.g.*, *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Davis v. Carter*, 452 F.3d 686, 696 (7th Cir., 2006).

## SECOND CAUSE OF ACTION

**Americans with Disabilities Act – Discrimination Against Qualified Individuals with Disabilities**

65. Plaintiff Brenda Smith reasserts and realleges the preceding paragraphs. Aroostook County Jail is a "public entity" subject to the Americans with Disabiliteis Act. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

66. Defendants Chief Deputy Gillen and Commissioner Fitzpatrick deny Ms. Smith the benefits of the jail's and prison's medical programs on the basis of Mr. Smith's disability.

67. Defendants Chief Deputy Gillen and Commissioner Fitzpatrick refuse to make a reasonable accommodation for Ms. Smith by providing her with her prescribed maintenance dosage of buprenorphine during her incarceration, thereby discriminating against him on the basis of disability, even though accommodation would in no way alter the nature of the healthcare program. *See Kiman v. New Hampshire Dep't of Corrections*, 451 F.3d 274, 283-84 (1st Cir. 2006)

## PRAYER FOR RELIEF

Wherefore, Brenda Smith, respectfully requests that this Honorable Court:

68. Issue an injunction ordering Defendants to provide Plaintiff with buprenorphine or an equivalent medication during the course of her incarceration.

69. Award Plaintiff monetary damages to fairly compensate her for her injuries, including for the denial of constitutional rights;

70. Award Plaintiff attorneys fees and costs;

71. Grant such further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff Smith demands a jury for all issues so triable.

Dated: September 6, 2018

                                              Respectfully Submitted,

                                              /s/Peter Mancuso
                                              Peter Mancuso, Esq.
                                              Andrew Schmidt, Esq.
                                              Andrew Schmidt Law, PLLC
                                              97 India St.
                                              Portland, Maine 04101
                                              (207) 619-0884
                                              peter@maineworkerjustice.com