UNITED STATES DISTRICT COURT
District of Maine

| | |
|---|---|
| BRENDA SMITH,<br>                Plaintiff<br><br>v.<br><br>AROOSTOOK COUNTY and SHAWN D. GILLEN,<br>                Defendants | Docket No. 1:18-cv-00352-NT |

### DEFENDANTS AROOSTOOK COUNTY AND GILLEN'S PRELIMINARY OBJECTION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Before the Court is Plaintiff's Motion for Preliminary Injunctive Relief. In particular, the Plaintiff asks this Court to order the Defendants to provide buprenorphine to her upon her possible future admission to the Aroostook County Jail. Both because Plaintiff's request is not ripe for judicial consideration, and because she fails to establish the necessary conditions precedent for the issuance of the extraordinary relief requested, the motion must be denied.[1]

### FACTS

The Plaintiff suffers from opiate addiction which is alleged to be controlled medically by

---

[1] The Defendants moved for a fourteen-day extension of time within which to file their written opposition to Plaintiff's Motion for Preliminary Injunction. The Court convened a telephoned conference with the parties on November 16, 2018. Following the conference, the Court issued an order and report of conference. Consistent with the conference, the Defendants file this preliminary objection to Plaintiff's motion. Cognizant of the fact that there will be an evidentiary hearing on Plaintiff's motion at which time both parties will have an unfettered opportunity to offer evidence on all of the issues generated by Plaintiff's motion and to thereafter file written arguments in support of and in opposition to the motion addressing questions of both fact and law, this submission is denominated as "preliminary." This filing is not intended to rebut the specific factual averments contained in Plaintiff's motion, nor the legal arguments in support thereof. Rather, it is intended to highlight the evidence the Defendants expect to be adduced on their behalf at hearing and to identify, in general fashion, the legal arguments that support their position.

the controlled use of an opiate replacement drug, buprenorphine.  Plaintiff expects to serve a term of imprisonment in the Aroostook County Jail beginning on January 14, 2019.[2]  The Plaintiff is a criminal defendant in *State v. Smith,* AROCD-CR-18-40057, and the terms of her plea agreement require forty days of incarceration.  She expects to serve this sentence at the Aroostook County Jail.

Facts which address the merits of the Plaintiff's substantive claims are as follows.  If the Plaintiff is held at the Aroostook County Jail, she will receive medical care as provided by jail policies.  Those policies are collectively marked as Exhibit 1 and appended hereto.[3]  Aroostook County contracts with the Katahdin Valley Health Center to provide health care for people incarcerated in the Aroostook County Jail.  *Exhibit 2*.  Medical personnel, including medical doctors, family nurse practitioners, and registered nurses, attend to the inmate population pursuant to the contract.

As specifically relates to this case, the Plaintiff will be assessed for risk of opiate withdrawal symptoms using a widely-accepted instrument known as the Clinical Opiate Withdrawal Scale (COWS).  *Exhibit 3*.  Depending upon the results of this instrument, a specific Opiate Withdrawal Protocol will be followed.  *Exhibit 4*.

The Plaintiff would not be provided buprenorphine as this drug is specifically prohibited from the Aroostook County Jail.  The drug is prohibited because it is widely known to be coveted within populations of incarcerated individuals for its intoxicating effects.  As outlined in the affidavit of the Aroostook County Jail Administrator Craig Clossey (*Exhibit 5)*, the Aroostook

---

[2]Plaintiff is seeking a postponement of the January 14, 2019, reporting date, and the Defendants will endorse her request in that regard.
[3]An index at the beginning of the exhibit is provided for ease of reference to the discrete policy directives.

2

County Jail, like many jails and prisons nationwide, has experienced serious problems due to the presence of Suboxone.[4]  Suboxone is so desired in the inmate population that inmates have been known to attempt to smuggle it in their dentures, to obtain it through contact visits, and even to have it diluted and mailed to them in the form of pictures and letters, or as part of the adhesive that seals envelopes.  In addition, inmates are well known to hoard medication that they are prescribed and administered within the jail through "cheeking" and other means.  Inmates like the Plaintiff who are prescribed drugs for legitimate reasons have been known to willingly hide it and provide it to other prisoners.  The Affidavit of Craig Clossey is intended simply for the purpose of demonstrating, in general fashion, problems associated with the presence of Suboxone in incarcerated populations, and the lengths to which inmates will go to obtain it.  At hearing, the Defendant will present expert testimony from correctional officials describing in more detail the nature and extent of this problem on a national basis, and the reasons that many jails and prisons do not allow the drug in their facilities.

So-called "Medically Assisted Treatment (MAT)" (Plaintiff's preferred treatment alternative) is but one means of treating opiate addiction.  Other means include the use of withdrawal protocols by which neither illicit nor prescribed forms of opiates are provided to the patient, and through which symptoms of withdrawal that they may experience in the short term following cessation are managed medically.  There are no known long-term effects of withdrawal if the withdrawal symptoms are managed according to medically-accepted protocols.

The medical testimony, expected to be offered through well recognized experts, will be that opiate addiction and withdrawal can be managed in institutionalized populations both with

---

[4]Suboxone is buprenorphine combined with naloxone.

and without MAT. With the exception of withdrawal symptoms which can and will be managed during periods of incarceration, the only potential deleterious effect of discontinuing medically-assisted treatment is relapse. Because the Aroostook County Jail does not permit opiates in its facility, the only risk of relapse would be from illicitly obtaining those drugs while incarcerated. Once released, Ms. Smith will be free to return to medically-assisted treatment.

The Plaintiff admits she has previously been incarcerated at the York County Jail, during which time she was not provided with buprenorphine and that she has "been forced to go off [her] MAT previously for short periods of time." The record, at least as developed thus far, contains no medical evidence suggesting that the Plaintiff suffered any significant deleterious medical effects as a consequence of not being provided buprenorphine. It may well be that the Plaintiff experienced some physical and/or emotional discomfort as a result of not receiving her preferred medication, but the record does not contain medical evidence that the consequences rose to the level of a "serious medical need." *See generally, Farmer v. Brennan,* 511 U.S. 825 (1994)*; Estelle v. Gamble, 429 U.S. 97, 104 (1976).*

## LEGAL ARGUMENT

I.  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION IS NOT RIPE FOR DETERMINATION AT THIS TIME.

"Determining ripeness involves a dual inquiry: evaluation of both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. Both prongs of the test must be satisfied, although a strong showing on one may compensate for a weak one on the other." *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003). "[T]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Ernst & Young v.*

4

*Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995).  "The hardship prong evaluates the extent to which withholding judgment will impose hardship -- an inquiry that typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties. . . .This inquiry encompasses the question of whether plaintiff is suffering any present injury from a future contemplated event."  *McInnis-Misenor*, 319 F.3d 63 at 70 (citations and quotations omitted).  "[P]remature review not only can involve judges in deciding issues in a context not sufficiently concrete to allow for focus and intelligent analysis, but it also can involve them in deciding issues unnecessarily, wasting time and effort."  *W.R. Grace & Co. v. United States EPA*, 959 F.2d 360, 366 (1st Cir. 1992).

In this case, the Plaintiff's request for injunctive relief is based on uncertain future events that may or may not occur.  The Plaintiff alleges that she has been sentenced to serve 40 days of incarceration at the Aroostook County Jail.  The Plaintiff's sentence has previously been postponed twice.  A further continuance or the occurrence of other unforeseen events during the intervening time before she is to report to jail create uncertainty.  Given this uncertainty, this action is premature and should be dismissed.

II.    PLAINTIFF'S MOTION DOES NOT DEMONSTRATE THAT SHE IS ENTITLED TO INJUNCTIVE RELIEF.

The party seeking injunctive relief must demonstrate the following:

> (1) that [he] has a substantial likelihood of success on the merits; (2) that [he] faces a significant potential for irreparable harm in the absence of immediate relief; (3) that the ebb and flow of possible hardships are in favorable juxtaposition (i.e., that the issuance of an injunction will not impose more of a burden on the nonmovant than its absence will impose on the movant); and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest.

*McGuire v. Reilly*, 260 F.3d 36, 42 (1st Cir. 2001).

> A. <u>The Plaintiff has not demonstrated that she is likely to succeed on the merits.</u>
>
> > 1. The Plaintiff has not demonstrated that she is likely to succeed on an ADA claim.
>
> To state a claim for a violation of Title II, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability.

*Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006). A disagreement with a reasoned medical judgment is not sufficient to state a disability discrimination claim. *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006). In this case, the Plaintiff is not arguing that she will be denied medical services. Instead, she is requesting that the court order that she receive specific medication. This is a disagreement with the method of treating a patient at the jail. Because the Plaintiff is not being excluded from a service or program because of her disability, she has not demonstrated that she is likely to succeed on the ADA claim.

> > 2. The Plaintiff has not demonstrated that she is likely to succeed on an Eighth Amendment claim.

A denial of medical care claim requires evidence of deliberate indifference to a serious medical need of the inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To succeed on an Eighth Amendment claim based on inadequate or delayed medical care, a plaintiff must satisfy both a subjective and objective inquiry: [s]he must show first, 'that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety,' and second, that the deprivation alleged was 'objectively, sufficiently serious.'" *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011) (*citing Burrell v. Hampshire Cty.*, 307 F.3d

1, 8 (1st Cir. 2002)). "The standard encompasses a narrow band of conduct: subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim, rather, the treatment provided must have been so inadequate as to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Leavitt*, 645 F.3d at 497 (citations and quotations omitted). "[W]hen a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation. The care provided must have been so inadequate as to shock the conscience. *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 162 (1st Cir. 2006)(citations and quotations omitted). Jails are "by no means required to tailor a perfect plan for every inmate; while it is constitutionally obligated to provide medical services to inmates, these services need only be on a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." *United States v. Derbes*, 369 F.3d 579, 583 (1st Cir. 2004)(citations and quotations omitted). The First Circuit has previously held that a doctor who treated an inmate's heroin withdrawal with a pharmaceutical protocol which lasted a total of nine days was not deliberately indifferent. *See Ramos v. Patnaude*, 640 F.3d. 485 (1st Cir. 2011); s*ee also United States v. Walker*, 2013 CCA LEXIS 262, at *9 (A.F. Ct. Crim. App. Mar. 22, 2013)(stating that "although the process of detoxifying from methadone was undoubtedly uncomfortable and painful" it did not violate the Eighth Amendment).

This issue involves a difference of medical opinion about how to treat Plaintiff's medical conditions. The jail contracts with Katahdin Valley Health Center to provide medical care to inmates. The medical providers from Katahdin Valley Health Center are authorized to examine

7

inmates and prescribe appropriate medication. The jail has made the determination that opioid replacement medications are generally not prescribed at the jail because of safety and security concerns. The jail does provide alternative medications to treat opioid withdrawal.

Moreover, the jail's decision not to provide opioid replacement mediation is entitled to deference. "When evaluating medical care and deliberate indifference, security considerations inherent in the functioning of a penological institution must be given significant weight." *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878 (1979). "Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974). "In consequence, even a denial of care may not amount to an Eighth Amendment violation if that decision is based in legitimate concerns regarding prisoner safety and institutional security." *Kosilek*, 774 F.3d at 83.

In sum and substance, the Plaintiff's complaint (as evidenced by the facts contained in the affidavits and those to be adduced at trial) is not that she is being denied medical treatment, but that she is being denied the medical treatment of her and her own doctor's choice. The Plaintiff cannot demonstrate that the jail policy of employing an alternate means of managing the risk of withdrawal symptoms is an exaggerated response to the security and safety concerns of the jail. Jail administrators are entitled to wide-ranging deference to adopt and enforce their policies.

8

Courts may not interfere in the exercise of the expert discretion of prison officials in the absence of the required showing. Given this deferential standard, the Plaintiff has not demonstrated that she is substantially likely to prove that she has been denied adequate medical care as that standard is analyzed under the Eighth Amendment.

      B.      <u>Plaintiff will not suffer irreparable injury in the absence of injunctive relief.</u>

"[T]he burden of demonstrating that a denial of interim injunctive relief would cause irreparable harm [is placed] squarely upon the movant." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996). This is a substantial burden. *Id*. Plaintiff has not demonstrated that she will suffer irreparable harm if she is not granted injunctive relief. The Plaintiff admits that she has been off buprenorphine for 7 days when she was incarcerated at the York County Jail and for other short periods of time. The Plaintiff has been able to return to treatment after these periods.

In addition, the medical evidence will be clear that there are two ways in which a person who is discontinued from a course of buprnorphine may suffer harm: (1) the immediate effects of withdrawal and (2) the likelihood of relapse to the use of illicit opiates. In this case, neither risk is significant and certainly does not rise to the level of an irreparable injury.

With respect to the risk of suffering withdrawal symptoms, the Plaintiff will be managed in accordance with the Opiate Withdrawal Protocol which has proven successful with this Plaintiff in particular, and with other inmates at the Aroostook County Jail. The medical evidence will be clear that as long as withdrawal symptoms are managed medically, it is unlikely that the Plaintiff will suffer any long-term effects.

Second, the risk of relapse is easily managed by reinstating the medically-assistant treatment upon release from incarceration. The risk of relapse while incarcerated is extremely minor, due to the jail policies and procedures which prohibit the introduction of certain drugs, including Suboxone, into the jail. For these reasons as well, the Plaintiff cannot meet the burden of demonstrating irreparable harm.

  C. <u>The balance of equities tilts in Defendants' favor against Plaintiff.</u>

The court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. . . . The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Given this standard and the fact that the Plaintiff has previously gone without buprenorphine, the balance of equities is on the side of the Defendant. This is in keeping with the proposition that "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)

  D. <u>Plaintiff has not demonstrated that the public interest will not be adversely affected if the injunction is issued.</u>

In this case, the Plaintiff seeks the court to issue an order requiring the Defendants to provide the Plaintiff with a specific medication. Doing so would require the Court to override decisions of correctional authorities responsible for the safety, security, and efficient operation of the jail, which would adversely affect the public interest.

III.  Conclusion

      For all of the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction should be denied.

Dated:   November 19, 2018                 /s/   Peter T. Marchesi
                                                                 Peter T. Marchesi, Esq.
                                                                 Wheeler & Arey, P.A.
                                                                 Attorneys for Defendants Aroostook County and Gillen
                                                                27 Temple Street
                                                                 Waterville, ME   04901

## UNITED STATES DISTRICT COURT
### District of Maine

| | |
|---|---|
| BRENDA SMITH,<br>          Plaintiff<br><br>v.<br><br>AROOSTOOK COUNTY and SHAWN D. GILLEN,<br>          Defendants | Docket No. 1:18-cv-00352-NT |

## CERTIFICATE OF SERVICE

I, Peter T. Marchesi, hereby certify that:

- Defendants Aroostook County and Gillen's Preliminary Objection to Plaintiff's Motion for Preliminary Injunction

has been served this day on Plaintiff by filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

    Peter Mancuso, Esq.                           *peter@maineworkerjustice.com*
    Emma Bond, Esq.                                 *ebond@aclumaine.org*

Dated: November 19, 2018                        /s/ Peter T. Marchesi
                                                                         Peter T. Marchesi, Esq.
                                                                         Wheeler & Arey, P.A.
                                                                         Attorneys for Defendants
                                                                         27 Temple Street
                                                                         Waterville, ME 04901